UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LT LEASING, INC., | No.  2:14-cv-00716-MCE-EFB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| NHA HAMBURGER ASSEKURANZ-AGENTUR GmbH, and UNIQA SACHVERSICHERUNG AG, | |
| Defendants. | |

Through this action, Plaintiff LT Leasing, Incorporated ("Plaintiff") seeks to recover damages from Defendants NHA Hamburger Assekuranz-Agentur GmbH ("NHA") and Uniqa Sachversicherung Ag ("Uniqa") (collectively, "Defendants") for their alleged breach of an insurance contract.  NHA has filed a motion requesting that the Court either dismiss this case under the common-law doctrine of forum non conveniens or transfer this case to a more convenient forum in the United States under 28 U.S.C. § 1404(a). ECF No. 9.  Plaintiff opposes both dismissal and transfer.  For the reasons that follow, Defendants' Motion is DENIED.[1]

///

_____

[1]  Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

1

2

## BACKGROUND[2]

3       Plaintiff is a California corporation with its principal place of business in South

4   Lake Tahoe, California.  Defendant NHA is a German limited liability company with its

5   principal place of business in Hamburg, Germany.  NHA is an agent for Defendant

6   Uniqa, which is an Austrian corporation with its principal place of business in Vienna,

7   Austria.

8       Plaintiff is the owner of the M/Y R Rendezvous, a 110-foot yacht ("the Yacht").

9   On April 12, 2013, Plaintiff entered into a written contract with Sevenstar Yacht Transport

10  B.V. ("Sevenstar B.V.") of Amsterdam, Netherlands, to transport the Yacht from Port

11  Everglades, Florida to Ensenada, Mexico.  Sevenstar B.V. appointed its Florida agent,

12  Sevenstar Yacht Transport USA Agencies, LLC ("Sevenstar USA") to make the

13  necessary arrangements.  Sevenstar USA, in turn, assigned a loadmaster in Florida to

14  oversee the load and stowage of the Yacht aboard the M/V Rickmers Tianjin.

15      On April 14, 2013, Plaintiff delivered the Yacht to the M/V Rickmers Tianjin in

16  Florida for transportation to Mexico.  Plaintiff contends that the Yacht was in good order

17  and condition before it was loaded onto the M/V Rickmers Tianjin; NHA maintains that

18  the Yacht "had defects or conditions which were observed and documented by several

19  witnesses in Florida."  NHA's Mot. at 5-6.[3]  The parties, however, agree that the Yacht

20  was damaged during the lifting process onto the M/V Rickmers Tianjin.

21      As required under the transportation contract with Sevenstar B.V., Plaintiff had

22  purchased from Defendants all-risk cargo insurance without any deductible to cover the

23  Yacht in the event of loss or damage.  Sevenstar B.V. issued a Certificate of Insurance

24  ///

25  _____

26  [2] The following statement of facts is based on the allegations in Plaintiff's Complaint, Mar. 18, 2014, ECF No. 1, and NHA's Motion, Oct. 22, 2014, ECF No. 9.  Unless otherwise noted, the parties do not dispute these facts.

27

28  [3] For ease of reference, all page number citations to court documents are to the pagination assigned via the court's electronic filing system.

2

1   (Number 282/2013) covering the Yacht ("the Certificate").[4]  The Certificate states that

2   Defendants agreed to insure the Yacht from risks of loss or damage.  The Certificate

3   also provides:  "This insurance is subject to English law and practice."  Additionally, the

4   Certificate indicates that NHA "has insured the above mentioned goods for the voyage

5   and value stated on behalf of Sevenstar [B.V.] under policy number 2006-0608-001."[5] [6]

6        Plaintiff contends that the Yacht was covered from all risks of physical loss under

7   the Certificate when it was damaged during the lifting process in Florida.  After using its

8   own resources (approximately $375,950) to repair that damage, Plaintiff initiated a claim

9   against Defendants for insurance benefits.  According to NHA, however, "much of what

10  was claimed by [Plaintiff] was pre-existing or not connected to the transport of the

11  [Y]acht."  NHA's Mot. at 8, Oct. 22, 2014, ECF No. 9.  Defendants have not paid any

12  money towards the damage of the Yacht.

13       Plaintiff's Complaint identifies three claims for relief:  (1) breach of contract,

14  (2) declaratory relief against all defendants, and (3) tortious breach of the implied

15  covenant of good faith and fair dealing.

16  ///

17  ///

18  ///

19  ///

20

21       [4]  NHA has submitted a copy of the Certificate.  See Decl. of Lars Toeppner (Ex. 3 at 2), Oct. 22,
    2014, ECF No. 10-3.

22       [5]  The policy referenced in the Certificate is "[t]he master policy of insurance," and provides that
23  "Sevenstar is the master insured."  See Toeppner Decl. at ¶ 4.  Under "Place of Jurisdiction," the policy
    states it is "[s]ubject to German Law and Jurisdiction or the jurisdiction given under ICC (A) 1/1/2009 at the
24  Assureds/Co-Assureds option."

25       [6]  NHA's Motion provides additional details to the formation of the insurance contract.  According
    to the Motion, Plaintiff emailed a completed insurance application to Sevenstar USA.  Sevenstar USA
26  forwarded that information to Sevenstar BV, who in turn forwarded the information to Pantaenius
    Unternehmens-versicherungen GmbH ("Pantaenius").  Pantaenius, a German company, was the
27  insurance broker for Sevenstar B.V. and the claims survey agent for the insurers.  Sevenstar B.V. is the
    insured under the master policy.  The master policy allows Sevenstar B.V. to issue Certificates of Marine
28  Insurance to individual yacht owners. Pursuant to the master policy, Sevenstar B.V. issued the Certificate
    to Plaintiff via email.

                                              3

1

**ANALYSIS**

2

3      In its Motion, NHA argues that the Court should either dismiss this case under the

4  common-law doctrine of forum non conveniens or transfer this case to a more

5  convenient forum in the United States under 28 U.S.C. § 1404(a).  In its Opposition to

6  NHA's Motion (ECF No. 18), Plaintiff counters that neither dismissal nor transfer is

7  appropriate.  NHA advances an entirely new argument in its Reply (ECF No. 20) in

8  asking that the Court enforce a forum-selection clause in the Certificate.  Plaintiff quickly

9  filed an Objection to NHA's Reply (ECF No. 23), which requested that the Court either

10  strike the Reply or permit Plaintiff to file a surreply.

11      The Court will address each of these arguments, beginning first with NHA's claim

12  that the Certificate includes a forum-selection clause.  <u>See</u> <u>Atl. Marine Constr. Co. v.</u>

13  <u>U.S. Dist. Court for W. Dist. of Tex.</u>, 134 S. Ct. 568, 581 (2013) (explaining that the

14  analysis of a "§ 1404(a) motion (or a forum non conveniens motion) . . . . changes,

15  however, when the parties' contract contains a valid forum-selection clause ").

16      **A.  Forum-Selection Clause**

17      Although this Court "need not consider arguments raised for the first time in a

18  reply brief," <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007), the Court now

19  addresses and summarily dismisses NHA's newly raised argument.

20      The Certificate states:  "This insurance is subject to English law and practice."

21  Plaintiff and NHA agree that this provision is a choice-of-law clause, and that English law

22  governs this suit.  In its Reply, however, NHA suggests that the provision also serves as

23  a forum-selection clause.  But "[t]his insurance is subject to English law and practice"

24  does not identify, let alone mandate, a specific forum for litigating disputes under the

25  Certificate.  <u>Cf.</u>  <u>Atl. Marine</u>, 134 S. Ct. at 575 (analyzing a contract that provided all

26  disputes between the parties "shall be litigated in the Circuit Court for the City of Norfolk,

27  Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk

28  Division.");  <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 2 (1972) ("Any dispute

1    arising must be treated before the London Court of Justice."); <u>Manetti-Farrow, Inc. v.</u>

2    <u>Gucci America, Inc.</u>, 858 F.2d 509, 511 (9th Cir. 1988) ("For any controversy regarding

3    interpretation or fulfillment of the present contract, the Court of Florence has sole

4    jurisdiction.").  Because the choice-of-law clause does not require that the parties litigate

5    their disputes under the Certificate in a specific forum, it does not also serve as a forum-

6    selection clause.

7         NHA appears to suggest that the relevant forum-selection clause is found not in

8    the Certificate, but rather in the "master policy" (which designated Germany as the

9    mandatory forum).  <u>See</u> NHA's Reply at 5, Dec. 1, 2014, ECF No. 20 ("the Certificate of

10   Insurance provides that English law and practice apply and incorporates the conditions

11   of the underlying policy of insurance which includes the German forum.").  But the

12   master policy was an agreement between Sevenstar B.V. and Pantaenius, and Plaintiff

13   was not a party to that contract.  <u>See</u> <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. 279, 294

14   (2002) ("It goes without saying that a contract cannot bind a nonparty.").  <u>Cf.</u> <u>M/S</u>

15   <u>Bremen</u>, 407 U.S. at 17-18 ("Whatever 'inconvenience' Zapata would suffer by being

16   forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at

17   the time of contracting.").  NHA's suggestion that the Certificate "incorporates" the

18   master policy is also unconvincing:  the Certificate's only mention of the master policy

19   states that NHA, acting on behalf of Uniqa, had insured the Yacht on behalf of Sevenstar

20   B.V., pursuant to the master policy.  <u>See</u> Toeppner Decl., Ex. 3 at 2.

21        Because NHA has failed to establish the existence of a forum-selection clause,

22   there is no such clause for the Court to enforce.

23        **B.  Forum Non Conveniens**

24         "A federal court has discretion to dismiss a case on the ground of forum non

25   conveniens . . . ."  <u>Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 429

26   (2007).  Although dismissal "reflects a court's assessment of a range of considerations,"

27   <u>id.</u>, "[a] party seeking dismissal . . . must show two things:  (1) the existence of an

28   adequate alternative forum, and (2) that the balance of private and public interest factors

1    favors dismissal," Loya v. Starwood Hotels & Resorts Worldwide, Inc., 583 F.3d 656, 664

2    (9th Cir. 2009).  The Ninth Circuit has identified the following private interest factors:

3
4
5
6

> (1) the residence of the parties and the witnesses; (2) the
> forum's convenience to the litigants; (3) access to physical
> evidence and other sources of proof; (4) whether unwilling
> witnesses can be compelled to testify; (5) the cost of bringing
> witnesses to trial; (6) the enforceability of the judgment; and
> (7) all other practical problems that make trial of a case easy,
> expeditious and inexpensive.

7    Boston Telecomms. Grp., Inc. v. Wood, 588 F.3d 1201, 1206-07 (9th Cir. 2009).  The

8    Ninth Circuit has also identified the following public interest factors:  "(1) the local interest

9    in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local

10   courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute

11   unrelated to a particular forum."  Id. at 1211.

12       "A defendant invoking forum non conveniens ordinarily bears a heavy burden in

13   opposing the plaintiff's chosen forum," and particularly so when the plaintiff has chosen

14   its home forum.  Sinochem Int'l, 549 U.S. at 430; see also Dole Food Co. v. Watts,

15   303 F.3d 1104, 1118 (9th Cir. 2002) ("Forum non conveniens is an exceptional tool to be

16   employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for

17   their claim.").  A district court abuses its discretion when it "fails to hold a party to its

18   'burden of making a clear showing of facts which establish such oppression and vexation

19   of a defendant as to be out of proportion to plaintiff's convenience.'"  Carijano v.

20   Occidental Petroleum Corp., 643 F.3d 1216, 1236 (9th Cir. 2011) (quoting Boston

21   Telecomms., 588 F.3d at 1212).

22       The Court finds that NHA has not met its heavy burden of opposing Plaintiff's

23   chosen forum, and that the balance of private and public interest factors weighs against

24   dismissal.[7]  The Court will address each of the factors that the Ninth Circuit identified in

25   Boston Telecommunications.

26   ///

27   _____

28       [7] This finding renders unnecessary any discussion of whether NHA has demonstrated that
Germany is an adequate alternative forum.

6

**1. Private Interest Factors**

**a. Residence of Parties**

Plaintiff is a California corporation with its principal place of business in California, and NHA and Uniqa are both foreign corporations with their principal places of business in Europe.  The fact that Plaintiff has chosen this Court—its home forum—weighs against dismissal.  See Carijano, 643 F.3d at 1236 (finding that the district "erroneously afforded reduced deference to [plaintiff's] chosen forum"); Neelon v. Bharti, ___ F. App'x ___, No. 12-56958, 2014 WL 7336404, at *1 (9th Cir. Dec. 26, 2014) ("The district court did not weigh [plaintiff's] residency or consider the deference due [plaintiff's] chosen forum"); see also Boston Telecomms., 588 F.3d at 1207 (noting that although plaintiff's choice of forum—a federal district court in California—was entitled to deference because plaintiff was a citizen and resident of the United States, plaintiff "would stand in a stronger position were he a California resident").  In light of the Ninth Circuit's emphasis on deferring to a plaintiff's choice of forum—particularly when the plaintiff has chosen its home forum—the Court finds that the first factor weighs against dismissal.

**b. Convenience to the Litigants**

The Eastern District of California is undeniably convenient for Plaintiff and undeniably inconvenient for NHA.  Of course, NHA's proposed forum (Germany) would be inconvenient for Plaintiff.  Accordingly, this factor is neutral.  See Boston Telecomms., 588 F.3d at 1208.

**c. Access to Physical Evidence**

This factor requires that the Court compare "the ease of access to physical evidence and other sources of proof if this case is litigated in California versus [Germany]."  Id.  NHA maintains that "[t]he overwhelming majority of the relevant evidence . . . exists outside the Eastern District [of California] . . . ."  NHA's Mot. at 13.  But NHA has not made any representations as to whether the parties could access the evidence with greater ease if this case were litigated in Germany.  Absent any representation to the contrary, the Court finds that the difficulty of obtaining evidence for

a lawsuit in Germany is "likely to be equal to, or perhaps even greater than, the difficulty of obtaining [evidence] for purposes of an action in California."  Boston Telecomms., 588 F.3d at 1208.  Accordingly, "[t]he comparative difficulties presented by litigation in either of the two potential jurisdictions are, at best, in equipoise."  Id.

### d. Witnesses[8]

The Ninth Circuit has emphasized that "the focus for this private interest analysis should not rest on the number of witnesses in each locale[,] but rather the court should evaluate the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum."  Carijano, 643 F.3d at 1231 (internal quotation marks and ellipses omitted).  The defendant bears the burden of providing enough information for the court to make this determination.  Boston Telecomms., 588 F.3d at 1209 ("[Defendant], in asking for the extraordinary measure of dismissal on forum non conveniens grounds, needed to provide not simply the numbers of witnesses in each locale, but information sufficient to assist the court in assessing the materiality and importance of each witness.") (internal quotation marks omitted); Neelon, 2014 WL 7336404, at *2 ("Defendants only provided a list of witnesses who resided in either Canada or Mongolia.  This showing was insufficient to carry Defendants' burden.").

Plaintiff contends that "all of the witnesses, evidence, and supporting documentation is located in California."  Pl.'s Opp'n at 15.  NHA, on the other hand, claims that the "overwhelming majority of the witnesses and documents  . . . are in Europe and Florida."  NHA's Reply at 8.  NHA has submitted a "Witness Outline."  See Decl. of Jeremy B. Gard (Ex. 9), Oct. 22, 2014, ECF No. 14-2.  That Outline provides the names and location of several witnesses and is organized by the following topics: witnesses to the condition of the Yacht prior to loading; witnesses to damage occurring

---

[8]  For the sake of efficiency, the Court consolidates the analysis of the private interest factors related to witnesses (the first, fourth, and fifth factors identified in Boston Telecomms.).  See Boston Telecomms., 588 F.3d at 1208 (doing the same); see also Carijano, 643 F.3d at 1231 (addressing "Evidentiary Considerations" under a single heading).

1   at loading; witnesses to the condition of the Yacht in Mexico; witnesses to the carriage

2   contract; witnesses to the insurance contract; and witnesses to insurance claims

3   handling.  However, based on NHA's Reply, it appears that the material issue in this

4   case is the extent of the damage caused during the loading.  See NHA's Reply at 8

5   ("The extent of all repairs done to the [Yacht] after the voyage do not go [to] the

6   gravamen of the dispute.  A repair after the fact does not establish [that the] underlying

7   damage was caused during the coverage period, thereby triggering NHA's obligation to

8   pay Plaintiff.").  NHA suggests that Plaintiff is seeking reimbursement for repairs of

9   damage that predated the Certificate and the damage caused during the lifting onto the

10  M/V Rickmers Tianjin.  Thus, the relevant witnesses are those that have knowledge of

11  the condition of the Yacht both before and after loading.

12      Given the topics specified in NHA's Witness Outline, the testimony of the

13  identified witnesses is likely material.  But see Boston Telecomms., 588 F.3d at 1210

14  (finding that "the district court abused its discretion in holding that this private interest

15  factor was neutral when Wood provided very little information that would have enabled

16  the district court to understand why various witnesses were material to his defense").

17  Nevertheless, NHA has not established that this forum is less accessible and more

18  inconvenient for most of the witnesses than a German court would be.  As to the

19  witnesses to the condition of the Yacht prior to loading, NHA has identified seven

20  individuals, five of whom are located in Florida.  As to the five witnesses to the condition

21  of the Yacht in Mexico, one is in the United Kingdom, two are in California, and the other

22  two (both of which are also listed as witnesses to the condition of the vessel prior to

23  loading) are in Germany.  Thus, dismissing this case would be for the benefit of two

24  witnesses in Germany and one in the United Kingdom, and to the detriment of at least

25  seven individuals in California and Florida.

26      NHA's claim that "the taking of evidence from witnesses is relatively easier in the

27  [United States]" is unsupported and not persuasive.  NHA's Mot. at 14.  As in Boston

28  Telecommunications:  "This is a case in which witnesses are scattered around the globe.

1   Whether the case is tried in [Europe] or California, both parties will likely be forced to

2   depend on deposition testimony in lieu of live testimony for at least some witnesses."

3   588 F.3d at 1210.  This factor weighs against dismissal.

### e. Enforceability of the Judgment and "Other Practical Problems"

6   Because neither Plaintiff nor NHA has argued that there would be any problem

7   enforcing a judgment in either forum, this Court concludes that this public interest factor

8   is neutral.  See Boston Telecomms., 588 F.3d at 1210.  Similarly, neither party has

9   identified "other practical problems that make trial of a case easy, expeditious and

10  inexpensive."  Id. at 1207.  Accordingly, that public interest factor is also neutral.

### 2. Public Interest Factors

### a. Local Interest in the Lawsuit

13  This Court need not find that "California is the principal locus of the case or that

14  California has more of an interest than any other jurisdiction in order to conclude that

15  California has a meaningful interest in this litigation."  Boston Telecomms., 588 F.3d at

16  1212.  Rather, the Court need only determine if there is an identifiable local interest in

17  the controversy.  Id.  Here, there is a local interest in the lawsuit because Plaintiff is a

18  California corporation with its principal place of business in the Eastern District of

19  California.  Accordingly, this factor weighs against dismissal.

### b. Judicial Concerns[9]

21  Per the terms of the Certificate, English law is the governing law whether the case

22  proceeds in this Court or in Germany.  NHA has not established that the German courts

23  are any more familiar with English law than this Court.  Accordingly, the "familiarity with

24  the governing law" factor is neutral.

25  NHA has submitted exhibits in support of its claim that this Court is one of the

26  most congested federal district courts in the United States.  See NHA's Req. Judicial

27  _____

28  [9] See Carijano, 643 F.3d at1233-34 (analyzing the remaining public interest factors together because they "all relate to the effects of hearing the case on the respective judicial systems").

1   Notice (Ex. 10), Oct. 22, 2014, ECF No. 15-1.[10]  But NHA has not made any

2   representations as to the congestion of the German courts or the burden the case would

3   impose on local courts and juries.  Accordingly, those factors are neutral.

4       Lastly, NHA has not made any representation regarding the costs of resolving a

5   dispute unrelated to a particular forum.  That factor is also neutral.

6                   **3.  Balance of Private and Public Interest Factors**

7       The only non-neutral factors weigh against dismissal.  Taken together, the factors

8   fail to establish oppressiveness and vexation to NHA out of all proportion to Plaintiff's

9   convenience.  Carijano, 643 F.3d at 1234.  Because the private and public interest

10  factors do not strongly favor trial in Germany, dismissal on the grounds of forum non

11  conveniens is not warranted.  See Dole Food, 303 F.3d at 1118 ("The plaintiff's choice of

12  forum will not be disturbed unless the 'private interest' and 'public interest' factors

13  strongly favor trial in the foreign country."); see also Boston Telecomms., 588 F.3d at

14  1212 (reversing a forum non conveniens dismissal because the "district court did not

15  hold [the defendant] to his burden" of showing the foreign forum was more convenient

16  where "[a]ll but one of the private and public interest factors were either neutral or

17  weighed against dismissal").

18                   **C.  Transfer Under 28 U.S.C. § 1404(a)**

19       "For the convenience of parties and witnesses, in the interest of justice, a district

20  court may transfer any civil action to any other district or division where it might have

21  been brought . . . ."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "prevent the

22  waste of time, energy, and money and to protect litigants, witnesses and the public

23  against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S.

24  612, 616 (1964) (internal quotation marks omitted).  On a motion to transfer venue, the

25  moving party must make "a strong showing of inconvenience to warrant upsetting the

26  plaintiff's choice of forum."  Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D .

27  _____

28  [10]  The Court denies each of NHA's Requests for Judicial Notice (ECF No. 15), as none are
    necessary for resolution of NHA's Motion.

1  Cal. 2005) (quoting Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843

2  (9th Cir. 1986)).  Courts have discretion in deciding whether such transfer is warranted

3  based on an "individualized, case-by-case consideration of convenience and fairness."

4  Van Dusen, 376 U.S. at 622.

5      Once the court determines a case could have been brought before the proposed

6  transferee court, it must consider a number of factors relating to the interests of the

7  parties and the judiciary.  For example, the court may consider:  (1) the plaintiff's choice

8  of forum; (2) the respective parties' contacts with the forum; (3) the contacts relating to

9  the plaintiff's cause of action in the forum; (4) the cost of litigation in either forum; (5) the

10 ease of access to sources of proof; (6) the complexity of the governing law; (7) the

11 availability of compulsory process to compel attendance of unwilling non-party

12 witnesses; and (8) other factors that, in the interest of justice, impact the convenience or

13 fairness of a particular venue.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99

14 (9th Cir. 2000).

15     NHA argues that this Court should transfer the case to the Fort Lauderdale

16 Division of the United States District Court for the Southern District of Florida.  In support

17 of that argument, NHA cites "this case's significant contacts with that forum, [] the

18 convenience of the parties [and] the witnesses[,] and the administration of justice."

19 NHA's Mot. at 21.  The Court finds that this action could have been brought in the

20 Southern District of Florida.  That District would have subject matter jurisdiction on the

21 basis of diversity under 28 U.S.C. § 1332 because there is complete diversity of

22 citizenship between the parties named in the original complaint, and it is apparent from

23 the face of the complaint that at least $75,000 is in controversy.  Additionally, venue

24 would be proper under 28 U.S.C. § 1391(a), as Plaintiff's claims against Defendants

25 arguably first arose when the Yacht was damaged during loading onto the M/V Rickmers

26 Tianjin in Florida.

27     Nevertheless, transfer is not warranted because NHA has not made a sufficiently

28 strong showing of inconvenience to justify disturbing Plaintiff's choice of forum.  The first

12

1 factor clearly weighs against transfer, as Plaintiff has chosen its home forum, and the

2 remaining factors are neutral.  As to contacts with the forums, Plaintiff—again, a

3 California corporation with its principal place of business in the Eastern District of

4 California—presumably has significant contacts with the Eastern District of California.

5 Moreover, there is nothing to indicate that Plaintiff has, aside from the events described

6 in its Complaint, had any contact with the Southern District of Florida.  On the other

7 hand, Defendants do not appear to have had contacts with the Eastern District of

8 California, and its contacts with the Southern District of Florida are also limited to the

9 facts of this case.  See also Decker Coal, 805 F.2d at 843 ("The transfer would merely

10 shift rather than eliminate the inconvenience.")

11     Furthermore, it is difficult to determine the forum in which plaintiff's cause of

12 action accrued.  Although the damage to the Yacht occurred in the Southern District of

13 Florida, Plaintiff is not suing for the damage to the Yacht.  Rather, Plaintiff alleges that

14 Defendants have breached the Certificate.  NHA did not address the comparative costs

15 of litigation in its Motion.  Presumably, Plaintiff's litigation costs are lower here in its

16 home forum than in the Southern District of Florida.  It is unclear whether there is any

17 difference in Defendants' litigation costs; whether this case proceeds in this Court or in

18 the Southern District of Florida, Defendants are litigating in a foreign court.  The "ease of

19 access to sources of proof" is an outdated factor, as most discovery will be conducted

20 electronically and the "physical location" of electronic records is irrelevant.  As to "the

21 complexity of the governing law," both forums would be applying English law.  Lastly, the

22 parties would be able to utilize compulsory process to compel attendance of unwilling

23 non-party witnesses in both this Court and the Southern District of Florida.

24     NHA has failed to support its Motion with a strong showing of inconvenience.

25 Accordingly, the Court finds that a disruption of Plaintiff's choice of forum is unwarranted.

26 ///

27 ///

28 ///

13

1

## CONCLUSION

2

3        Thus, there is no forum-selection clause for the Court to enforce, and neither

4   dismissal under the common-law doctrine of forum non conveniens nor transfer under

5   28 U.S.C. § 1404(a) is warranted.  Accordingly, Defendant NHA's Motion to Dismiss or

6   Transfer (ECF No. 8) is DENIED.

7        IT IS SO ORDERED.

8   Dated:  April 9, 2015

9

10

11                                    _____
                                       MORRISON C. ENGLAND, JR, CHIEF JUDGE
12                                     UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28